# CONTINGENT FEE AGREEMENT

Dated ___8/7/2017___

The Client:

|            |                                        |
|------------|----------------------------------------|
| (Name)     | KENNETH BENJAMIN                       |
| (Address)  | 139 Center St Bellingham Mass 02019    |
| (Tele. #)  | 508-340-2441                           |
| (SSN)      | 028461808                              |

retains the Firms:

Andrus Wagstaff, P.C.                    Lawrence Litigation Group, LLP
7171 W. Alaska Drive                     1250 Connecticut Ave NW, Ste. 200
Lakewood, Colorado 80226                 Washington, DC 20036

to perform the legal services mentioned in paragraph (1) below.  For purposes of this agreement, Andrus Wagstaff, PC and Lawrence Litigation Group, LLP shall be collectively referred to as the "Firm." Andrus Wagstaff, PC and Lawrence Litigation Group, LLP will split the attorney fees between themselves as if you had retained just one law firm.  To be clear, retaining two law firms will not result in any additional legal fees owed by you.

1.     SCOPE OF ENGAGEMENT

The claim, controversy, and other matters with reference to which the services are to be performed are:

Product Liability and personal injury claims for damages arising out of exposure to Monsanto's Round Up. The firm will not pursue medical malpractice claims.

2.     CONTINGENCY

The contingency upon which compensation is to be paid is any recovery of money for the claim addressed in Scope of Engagement section above.

3.     CLIENT'S LIABILTY TO PAY COMPENSATION

The Client is not to be liable to pay compensation otherwise than from amounts collected for the Client by the Firm, except as follows:

In the event the Client terminates this contingent fee agreement without wrongful conduct by the Firm which would cause the Firm to forfeit any fee, or if the Firm justifiably withdraws from the representation of the Client, or if the parties mutually agree to terminate this agreement, the Firm may ask the court or other tribunal to order the Client to pay the Firm a fee based upon the reasonable value of the services provided by the Firm. If the Firm and the Client cannot agree how the Firm is to be compensated in this circumstance, the Firm will request the court or other tribunal to determine: (1) if the Client has been unfairly or unjustly

DocuSign Envelope ID: 935BE3A5-986A-4D0C-B9B9-8470E8CD7CAA

enriched if the Client does not pay a fee to the Firm; (2) the amount of the fee owed, taking into account the nature and complexity of the Client's case, the time and skill devoted to the Client's case by the Firm, and the benefit obtained by the Client as a result of the Firm's efforts; and (3) prejudice to the Firm if no such fee is paid. Any such fee shall be payable only out of the gross recovery obtained by or on behalf of the Client and the amount of such fee shall not be greater than the fee that would have been earned by the Firm if the contingency described in this contingent fee agreement had occurred.

4.    PERCENTAGE OF GROSS AMOUNT COLLECTED .

The Client will pay the Firm 40% percent of the gross amount collected. "Gross amount collected" means the amount collected before any subtraction of expenses and disbursements. "The amount collected" includes specially awarded attorneys' fees and costs awarded to the Client, if any. Lawrence Litigation Group, LLP and Andrus Wagstaff PC will split the attorney fees. Retaining two law firms will NOT result in additional attorney fees owed by you.

5.    FEES AND COSTS AWARDED TO OPPOSING PARTY

Costs and attorneys' fees, if any, awarded to an opposing party against the Client before completion of the case will be paid by the Client when ordered. Any award of costs or attorneys' fees, regardless of when awarded, will not be subtracted from the amount collected before computing the amount of the contingent fee under this agreement.

6.    EXPENSES

The Client is to be liable to the Firm for reasonable expenses and costs incurred in litigating client's claim. The Client will reimburse the Firm for such expenditures from his/her share of the recovery upon final resolution.

Expenses shall include, but not be limited to, cash and noncash expenditures for filing fees; subpoenas; depositions; witness fees; in-house and outside investigation services; expert witness fees; medical records and reports; LexisNexis/Westlaw and other computer research and on-line service costs; photographs; in-house and outside photocopies; facsimiles; long-distance telephone calls; postage and federal express, UPS and other overnight service charges; mediation fees; travel costs; United airline tickets; out-of-town hotel at a SPG, Hyatt or Hilton hotel; food and transportation charges; in-house and outside trial exhibits; in-house and outside multi-media services; outside legal fees and costs for estate, guardianship, bankruptcy and probate matters; outside resolution costs for allocation and oversight, and all other costs necessary for performance of legal services. Costs shall also include, if applicable, any assessment imposed by any Multi-District Litigation Court or State Court Consolidation or withheld from any settlement or favorable judgment by any defendant.

In addition to the above listed individual expenses, the Firm also charges common benefit costs to clients who are part of a class action or who also have individual claims that are part of a mass tort action. Common benefit costs are costs expended by the Firm for the common benefit of a group of clients. For example, if a deposition of a defendant expert

DocuSign Envelope ID: 935BE3A5-986A-4D0C-B9B9-8470E8CD7CAA

witness is taken in one case, and this deposition can be used for and/or benefit the claims of many other clients, the Firm classifies these costs as common benefit costs. By using this common benefit cost system, no one client has to solely bear the costs which actually benefit the group as a whole, and many of the most substantial costs of litigation can be shared equally by all. Thus, to the extent such charges benefit a group of clients, common benefit charges may include postage, faxes, telephone, copies, experts, investigation, computer research, medical research, transportation, litigation group expenses (i.e. AAJ litigation group), and some of the costs incurred in actually trying any one client's case before a jury.

All expenses advanced on the Client's behalf, whether individually and/or common benefit, shall bear interest at the rate of one percent (1%) per month (12% per year) until such time as the costs are paid by Client.

## 7. THIRD PARTY EXPENSES

The Client authorizes the Firm to pay from the amount collected the following: all physicians, hospitals, subrogation claims and liens. Where the applicable law specifically requires the Firm to pay the claims of third parties out of any amount collected for the Client or to deduct same to be held in escrow, the Firm shall have the authority to do so notwithstanding any lack of authorization by the Client, but if the amount or validity of the third party claim is disputed by the Client, the Firm shall deposit the funds into the registry of an appropriate court for determination. Any amounts paid or payable to third parties will not be subtracted from the amount collected before computing the amount of the contingent fee under this agreement.

## 8. MEDICAL MALPRACTICE ISSUES

The Client understands and agrees that the Firm has not been retained to investigate or pursue, and will not investigate or pursue, any medical malpractice action or any other action against our doctors. The Client understands that a medical malpractice may exist. The Client also understands that the manufacturers may attempt to point the blame at the doctors if the case goes to trial. The doctors may be able to be placed on the verdict form, and if the manufacturers are successful in convincing the jury the doctors were partially at fault, then our recovery may be reduced by the portion of the fault the jury places on the doctors. The Client understands that there are statutes of limitations that apply to the filing of medical malpractice claims, and that if a lawsuit is not filed against the doctors before the statute of limitations runs, then we will be forever prevented from suing the doctors. The Client understands that the statute of limitations may have already run, and that every day we wait to file a lawsuit may be the last day a lawsuit can be filed. The Client understands that the Firm will not be bringing any claims for medical malpractice or suing any of our doctors, and that if the Client wishes to sue the doctors then he or she will have to retain other counsel.

## 9. TIMELINESS OF CLAIM

The Client acknowledges that the Firm must have certain information to determine whether or not Client has a claim and that the Firm cannot file a lawsuit without that information. The Client also acknowledges that every claim has a Statute of Limitations and if a

Case 11-13389-j7    Doc 35-2    Filed 09/06/22    Entered 09/06/22 11:01:57 Page 3 of 6

lawsuit is not filed prior to the expiration of the applicable Statute of Limitations, the right to file a lawsuit may be gone forever. Client specifically acknowledges that, prior to filing a lawsuit, the Firm must have the following information: (1) information establishing who manufactured the product at issue in your case ("Product ID"); and (2) medical records establishing Client's alleged injury ("Proof of Injury"). Although Product ID can sometimes be obtained in short order, the Client acknowledges that it can sometimes take up to 6 months, or longer, to obtain Product ID even when diligence is exercised. And, sometimes, we can never obtain Product ID. The client agrees to help assist in obtaining Product ID and Proof of Injury. The Client understands that the Firm may choose to terminate this relationship if Product ID or Proof of Injury cannot be obtained. **Client understands it will take the Firm a minimum of sixty (60) days after receipt of such information to evaluate the potential claim, and that should the statute of limitations or any other applicable deadlines expire during that sixty (60) day period, Client agrees not to hold the Firm (or its associated counsel) responsible for any consequences related to the expiration of that deadline.**

10.    DUAL REPRESENTATION

By execution of this Agreement, Client represents and warrants that they have not already retained other counsel to represent them in this matter. If it is later determined that Client had retained counsel to represent them in this matter prior to execution of this Agreement, Client agrees that the Firm shall still be entitled to its full fee percentage and recovery of its fees, and agrees to pay the Firm from their recovery in this matter or out of pocket if necessary. Client agrees to inform the Firm in writing if they retain subsequent counsel to assist and/or represent them in this matter and to provide contact information (firm name, lead attorney, phone number) of new counsel to the Firm. If Client does not so inform the Firm within 30 days of retaining subsequent counsel, Client agrees that the Firm shall still be entitled to its full fee percentage and recovery of its fees, and agrees to pay the Firm from their recovery or out of pocket.

**11.**    ASSOCIATED COUNSEL

The Client acknowledges that it may be necessary for the Firm to associate with other legal counsel and agree that the Firm's fees set forth above will include fees due associate counsel, which fees shall be divided based upon the work performed and/or obligations incurred by each participating firm. *The Client will pay no more in fees with the inclusion of associate counsel than he or she would pay pursuant to this contract if the Firm solely represented him or her.* The Client agrees that the Firm and associate counsel each will be responsible to represent the Client's interests. However, the Client agrees that the Firm, its attorneys and/or its employees will not be financially responsible for any wantonness, willfulness and/or intentional misconduct of associate counsel, associate counsel attorneys and/or associate counsel employees, and in no event will the Firm, its attorneys and/or employees be financially responsible for any punitive conduct and/or punitive damages arising

DocuSign Envelope ID: 935BE3A5-986A-4D0C-B9B9-8470E8CD7CAA

out of the conduct of associate counsel, associate counsel attorneys and/or associate counsel employees, and/or anyone acting on the behalf of associate counsel.

## 12.    SETTLEMENT PROCEDURE IN MULTIPLE CLIENT CASES

The Client understands that oftentimes in cases in which the Firm represents multiple clients in similar litigation, the opposing parties (the defendants) attempt to settle the Firm's cases in groups under a matrix type system whereby the Firm's clients are offered varying settlement amounts depending upon the circumstances of each of the client's cases. Once a settlement value under the matrix is determined, the client is then given the opportunity to accept or reject the value being offered within the matrix system. Similarly, defendants may wish to settle the Firm's cases as a group, meaning the defendants may attempt to settle the Client's case along with a number of other similar cases the firm is handling. When this group settlement system is being offered by the defendant, the Firm will get each client's authorization for a minimum gross amount for which the clients authorize the Firm to attempt to settle the Client's case. The Firm then adds up the total of all clients' minimum authorized settlement values and attempts to settle the group for at least the minimum authorized by the clients.  Finally, under some circumstances, the defendants offer to pay a certain sum to all the Firm's clients regardless of the circumstances of the individual cases. Thus, each client receives the same amount of money even though the clients may have different levels of injuries or liability.

Regardless of what method is used, the fact that the client's case settles with a group of others will not take away the Client's right to approve or not approve his/her individual settlement. Each client will always have the right to approve or not to approve his/her individual settlement. *Because the Client will be given the opportunity to individually evaluate and approve any settlement wholly independent from any other Firm client that may settle in a group with him or her, the Client agrees not to share any information (including, but not limited to, the nature of the Client's injury and the settlement amount) with any other Firm client who may settle in a group with him or her.*

## 13.    RECOVERY

The Client expressly grants power to the Firm to endorse and deposit into the Firm's Client Trust Account any checks in the Client's name resulting from a settlement either approved by the Client or issued pursuant to a court order, and authorizes the attorneys to deduct fees, costs, disbursements and expenses, and to pay all hospital and medical bills from the Client's share of the recovery.

## 14.    RETENTION OF CLIENT FILE

The Client understands that the client file maintained by the Firm is his or her property. However, the client also understands that the Firm will only retain the Client's file for a period of seven years after the case is completed.  After the seven-year period, the entire file will be discarded, and the Firm will not retain a copy of any portion of the file.  Thus, it is the Client's responsibility to seek the return of all original documents immediately after the case is completed, and to request a copy of any portions of the file the Client wishes to retain.  If the

Client waits more than seven years to request the file, then no portion of the file will be in existence at that time.

15.     LEGAL CONSTRUCTION

In case any provision, or any portion of any provision, contained in this Agreement shall for any reason be held to be invalid, illegal and/or unenforceable in any respect, such invalidity, illegality and/or unenforceability shall not affect the validity and/or enforceability of any other provision or portion thereof, and this Agreement shall be construed as if such invalid, illegal and/or unenforceable provision or portion thereof was never contained herein. The parties to this agreement do hereby subject themselves to the personal jurisdiction of the District Court of the State of Colorado and to the substantive and procedural laws thereof for the resolution of any disputes arising under this agreement and/or for the enforcement of any rights, duties, or obligations arising under this agreement.

16.     CHANGE OF ADDRESS

The Client agrees to keep the Firm informed at all times of their current address and telephone number.

WE HAVE EACH READ THE ABOVE AGREEMENT BEFORE SIGNING IT.

BY: _KENNETH BENJAMIN_____     8/7/2017
               Client                                  Date

BY: _____     _____
           Attorney                                Date

*[handwritten signature]*, ch 7 Trustee
Subject to Court Approval     8/29/22